UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| ADEBAYO KINGSLEY ADEEKO, *et al.*, ) | |
| ) | |
| *Plaintiffs*, ) | |
| ) | No. 1:19-cv-113 |
| v. ) | |
| ) | Judge Curtis L. Collier |
| CHATTANOOGA METROPOLITAN ) | Magistrate Judge Susan K. Lee |
| AIRPORT AUTHORITY, *et al.*, ) | |
| ) | |
| *Defendants.* ) | |

# M E M O R A N D U M

Defendants Chattanooga Metropolitan Airport Authority ("CMAA") and Officer Darrell Wright ("Officer Wright," collectively with CMAA, the "moving Defendants") have filed a motion to dismiss. (Doc. 7.) The moving Defendants seek the dismissal of all claims against CMAA and all claims against Officer Wright with the exception of the 42 U.S.C. § 1983 claim alleging an unlawful seizure of Ms. Ashley Adeeko ("Ms. Adeeko"). (*Id.*) Plaintiffs have responded in opposition (Doc. 11) and the moving Defendants have replied (Doc. 16).

Plaintiffs have also filed a motion to amend their complaint. (Doc. 12.) The moving Defendants have filed a response in opposition to the motion to amend. (Doc. 17.) The remaining defendants have not responded. Plaintiffs have not filed a reply and the time to do so has expired. *See* E.D. Tenn. L.R. 7.1(a).

For the reasons set out below, the Court will **GRANT IN PART** and **DENY IN PART** the moving Defendants' motion to dismiss and will **DENY** Plaintiffs' motion to amend their complaint.

## I.    BACKGROUND[1]

On April 13, 2018, Plaintiffs and their minor children arrived at the Chattanooga Metropolitan Airport and went to the National Car Rental business counter to pick up their rental car. Plaintiff Adebayo Adeeko ("Mr. Adeeko") provided his Tennessee driver's license and his credit card to the employee at the counter. The employee stepped away from the counter for several minutes and called CMAA police, falsely claiming Mr. Adeeko was presenting fake identification and a false form of payment. After returning to the counter, the employee told Mr. Adeeko she was "having problems" with the credit card and asked Mr. Adeeko why he was renting the vehicle and where he was going with it.

After several more minutes Officer Wright and an unnamed officer, Officer Jane Doe ("Officer Doe"), arrived at the business counter and detained Mr. Adeeko. Officer Doe retrieved Mr. Adeeko's driver's license and accused him of possessing and using a fake driver's license. Officer Doe and Officer Wright passed Mr. Adeeko's driver's license between them and Officer Wright told him it was "the best fake ID I ever saw."

Ms. Adeeko, hearing this interaction, walked over and told Officer Wright and Officer Doe that Mr. Adeeko's driver's license was just as valid as her own. Officer Doe then ordered Ms. Adeeko to produce her driver's license or she would go to jail with Mr. Adeeko. Ms. Adeeko asked why Officer Wright and Officer Doe would need her driver's license, but ultimately gave it to them out of fear.

Mr. Adeeko explained that he is an American citizen and produced a valid American passport. Officer Wright ordered Mr. Adeeko to hand over his passport and all of his credit cards.

---

[1] This summary of the facts accepts all of the factual allegations in Plaintiffs' Complaint (Doc. 1-3) as true. *See Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).

Officer Wright accused Mr. Adeeko of possessing fake credit cards and a fake social security card. He told Plaintiffs "everything I have points to [Adebayo] as a Nigerian" and asked why his passport said he was an American citizen when he was in fact a Nigerian. Officer Wright also accused Mr. Adeeko of possessing a fake passport. An unidentified TSA employee was called over and he stated the passport looked valid. Officer Wright said if it was valid, Mr. Adeeko must have obtained it with a fake license. Officer Wright demanded Mr. Adeeko provide his social security number, which Mr. Adeeko only gave Officer Wright after being threatened with arrest. Officer Wright contacted each financial institution that issued his credit cards to ask if the cards and accounts were valid, and to determine the accounts' particulars and balances. Plaintiffs were detained for over two and a half hours in full view of the public.

On March 19, 2019, Plaintiffs filed a complaint in state court against CMAA, Officer Wright, Officer Doe, and EAN Holdings, LLC, d/b/a National Car Rental ("EAN"). (Doc. 1.) Defendants then removed the case to this Court on April 23, 2019. (*Id.*) On April 30, 2019, the moving Defendants filed a motion to dismiss. (Doc. 7.) Plaintiffs have responded in opposition (Doc. 11) and the moving Defendants have replied (Doc. 16).

Plaintiffs have also filed a motion to amend their complaint. (Doc. 12.) Plaintiffs explain the amendment is merely to clarify that their 42 U.S.C. § 1981 claim against CMAA, Officer Wright, and Officer Doe is brought pursuant to 42 U.S.C. § 1983. (*Id.*) Only the moving Defendants have responded in opposition (Doc. 17) and the time to file a reply has expired. *See* E.D. Tenn. L.R. 7.1(a).

## II.    STANDARDS OF REVIEW

### A.    Motion to Dismiss

A party may move to dismiss a claim for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In deciding a Rule 12(b)(6) motion to dismiss, a court must first accept all of the complaint's factual allegations as true and construe the complaint in the light most favorable to the plaintiff. *See Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998). All ambiguities must be resolved in the plaintiff's favor. *Carter by Carter v. Cornwell*, 983 F.2d 52, 54 (6th Cir. 1993) (citing *Jackson v. Richards Med. Co.*, 961 F.2d 575, 577 (6th Cir. 1992)). Bare legal conclusions, however, need not be accepted as true. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986).

After assuming the veracity of factual allegations and construing ambiguities in the plaintiff's favor, the Court must then determine whether those allegations "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Sufficient factual allegations are pleaded when a court is able "to draw the reasonable inference that the defendant is liable for the misconduct alleged" and there is "more than a sheer possibility that a defendant has acted unlawfully." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To determine whether the complaint states a plausible claim on its face, a court must "draw on its judicial experience and common sense." *See id.* at 679.

If a party presents matters outside the pleadings in connection with a pending motion to dismiss, the court must either exclude those matters from consideration or treat the motion as one for summary judgment. Fed. R. Civ. P. 12(d). Documents attached to the pleadings are considered part of the pleadings, Fed. R. Civ. P. 10(c), and a court's consideration of documents referenced in a complaint that are integral to the claims does not convert a motion to dismiss into a motion

for summary judgment.  *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007).

### B.    Motion to Amend

Under Federal Rule of Civil Procedure 15(a)(2), a party may amend its pleading before trial with the court's leave, which "[t]he court should freely give . . . when justice so requires." The court's discretion is "limited by Fed. R. Civ. P. 15(a)'s liberal policy of permitting amendments to ensure the determination of claims on their merits."  *Gen. Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1130 (6th Cir. 1990) (quoting *Marks v. Shell Oil Co.*, 830 F.2d 68, 69 (6th Cir. 1987)).  In evaluating whether to grant leave to amend, the court should consider "undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment . . . ."  *Hageman v. Signal L. P. Gas, Inc.*, 486 F.2d 479, 484 (6th Cir. 1973) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## III.    DISCUSSION

Plaintiffs allege Officer Wright and Officer Doe, acting under color of law, violated (1) their Fourth Amendment right to be free from unreasonable seizures; (2) their Fourth Amendment right to be free from unreasonable searches; (3) their Fourteenth Amendment right to be free from unjustified invasions of privacy; (4) their right to be free from harm while in custody; (5) their Fourteenth Amendment right to equal protection of law; and (6) Mr. Adeeko's right to make and enforce a contract.  (Doc. 1-3.)  Plaintiffs allege CMAA is liable for failing to train and supervise Officer Wright and Officer Doe to prevent these violations.  (*Id.*)

Because "[a]n amended complaint supersedes an earlier complaint for all purposes," *In re Refrigerant Compressors Antitrust Litig.*, 731 F.3d 586, 589 (6th Cir. 2013), pending motions

directed to an initial complaint are generally denied as moot when an amended complaint is filed. *See, e.g., Lopez v. Metro. Gov't of Nashville*, No. 3:07-CV-0799, 2008 WL 913085, at *2 (M.D. Tenn. Apr. 1, 2008) (denying a motion for summary judgment after amended complaint filed). Accordingly, the Court will first consider Plaintiffs' motion to amend and will then address the moving Defendants' motion to dismiss.

### A. Motion to Amend Complaint

Plaintiffs have moved to amend their complaint to clarify their claim under 42 U.S.C. § 1981. (Doc. 12.) Plaintiffs explain that the moving Defendants pointed out in their motion to dismiss that a stand-alone claim under § 1981 cannot be brought against them because 42 U.S.C. § 1983 provides the sole remedy for actions against state actors. (Doc. 13.) Thus, the amended complaint includes a § 1983 claim against CMAA, Officer Wright, and Officer Doe, alleging they violated Mr. Adeeko's rights under § 1981. (Doc. 12-1.) Plaintiffs explain that the amended complaint does not make any substantive changes to their claims. (Doc. 12.)

The moving Defendants have filed a response in opposition to the motion to amend. (Doc. 17.) They assert the motion to amend should be denied as futile because a § 1981 claim, enforced through § 1983, requires proof of intentional discrimination and Plaintiffs have not alleged any intentional discrimination against Mr. Adeeko. (*Id.*)

In deciding whether to grant leave to amend a complaint, a court should consider whether the proposed claims would be futile. *See Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 383 (6th Cir. 1993); *N. Am. Specialty Ins. Co. v. Myers*, 111 F.3d 1273, 1284 (6th Cir. 1997). A proposed claim is futile if it could not withstand a Rule 12(b)(6) motion to dismiss. *See Thiokol Corp.*, 987 F.2d at 383. Thus, the Court must determine if,

assuming all factual allegations are true, Plaintiffs' proposed claim states a claim that is plausible on its face. *See Twombly*, 550 U.S. at 570.

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must set forth "facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Sigley v. City of Parma Heights,* 437 F.3d 527, 533 (6th Cir. 2006) (citing *West v. Atkins,* 487 U.S. 42, 48 (1988)). For claims against state entities, there must be a showing that the entity "had a 'policy or custom' that caused the violation of [the plaintiff's] rights." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

Here, Plaintiffs allege a violation of Mr. Adeeko's rights under § 1981, which protects the right of all individuals to "'make and enforce contracts' without respect to race." *Domino's Pizza Inc. v. McDonald*, 546 U.S. 470, 474 (2006) (quoting 42 U.S.C. § 1981(a)). To state a claim under § 1981, a plaintiff must plausibly allege purposeful discrimination. *See Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982) ("We conclude, therefore, that § 1981, like the Equal Protection Clause, can be violated only by purposeful discrimination.").

Plaintiffs' proposed claim alleges Officer Wright, Officer Doe, and CMAA interfered with Mr. Adeeko's ability to rent a vehicle and allege they did so for a discriminatory purpose. (Doc. 12-1.) However, the proposed complaint is devoid of any facts suggesting a discriminatory purpose. While Plaintiffs claim the EAN employee contacted CMAA police after profiling Mr. Adeeko based on his race and accent, Plaintiffs do not claim Officer Wright and Officer Doe profiled Mr. Adeeko or detained him because of his race. Plaintiffs also do not allege any policy or custom by CMAA that caused any discriminatory treatment. As a result, Plaintiffs' § 1983 claim against Officer Wright, Officer Doe, and CMAA for violating Mr. Adeeko's rights under §

1981 fails to state a claim for purposeful discrimination and thus would not survive a motion to dismiss. Accordingly, Plaintiffs' motion to amend will be denied.

**B.      Motion to Dismiss Claims Against Officer Wright in His Official Capacity**

The moving Defendants have moved for dismissal of all claims against Officer Wright in his official capacity as duplicative of the claims against CMAA. (Doc. 8.)

"A section 1983 action against a city official in his or her official capacity is treated as an action against the City entity itself." *Shamaeizadeh v. Cunigan*, 338 F.3d 535, 556 (6th Cir. 2003) (quoting *Barber v. City of Salem*, 953 F.2d 232, 237 (6th Cir. 1992)); *see also Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."). When a plaintiff sues both a state entity and its official, in his or her official capacity, the claims against the official may be dismissed as redundant. *Faith Baptist Church v. Waterford Twp.*, 522 F. App'x 322, 327 (6th Cir. 2013) (affirming dismissal of official-capacity suit where the government entity was also sued).

Here, Officer Wright has been sued in his official capacity as CMAA officer. (Doc. 1-3.) Because CMAA is also a party in this matter, the claims against Officer Wright in his official capacity are redundant. Accordingly, the Court will grant the moving Defendants' motion to dismiss the official-capacity suit and will dismiss the claims brought against Officer Wright in his official capacity.

**C.      Motion to Dismiss Claims Against Officer Wright in His Individual Capacity**

The moving Defendants seek dismissal of all claims alleged against Officer Wright in his individual capacity, except for Ms. Adeeko's unreasonable seizure claim. (Doc. 7.) The moving Defendants assert Officer Wright is entitled to qualified immunity on those claims. (Doc. 8.)

The moving Defendants also explain the same arguments would be made for Officer Doe, if and when she is served.  (Doc. 7.)  However, because Officer Doe has not yet been identified or served in this case, the Court will only address the claims brought against Officer Wright.

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

An officer is entitled to qualified immunity "if (1) the officer[] did not violate any constitutional guarantees or (2) the guarantee, even if violated, was not 'clearly established' at the time of the alleged misconduct." *Arrington-Bey v. City of Bedford Heights, Ohio*, 858 F.3d 988, 992 (6th Cir. 2017).  A right is "clearly established" where there is existing precedent that places "the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017); *see also Ohio Civil Serv. Emps. Ass'n v. Seiter*, 858 F.2d 1171, 1177 (6th Cir. 1988) ("[T]o find a clearly established constitutional right, a district court must find binding precedent by the Supreme Court, its court of appeals, or itself.").  The contours of the right "must be so well defined that it is 'clear to a reasonable officer that [the officer's] conduct was unlawful in the situation he confronted.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).  In deciding if an officer is entitled to qualified immunity, courts have discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

While the privilege of qualified immunity should be "'resolved at the earliest possible point,' . . . that point is usually summary judgment and not dismissal under Rule 12." *Wesley v.*

*Campbell*, 779 F.3d 421, 433–34 (6th Cir. 2015) (internal citations omitted); *see also Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011) (explaining that at the motion to dismiss stage "the court must determine only whether the complaint 'adequately alleges the commission of acts that violated clearly established law.'") (internal quotations and citations omitted). However, if a plaintiff's allegations do not "state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before commencement of discovery." *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015) (internal quotations and citations omitted).

### 1.  Unreasonable Seizure Claim

Plaintiffs allege Officer Wright, while acting under color of law, deprived Plaintiffs of their Fourth Amendment right to be free from unreasonable seizures by detaining them for two and a half hours based solely on the car rental employee's phone call.  (Doc. 1-3 at 10.)

The moving Defendants contend Officer Wright is entitled to qualified immunity on Mr. Adeeko's unreasonable seizure claim.  (Doc. 8.)  The moving Defendants argue that even if Mr. Adeeko was "seized" under the Fourth Amendment, the complaint does not establish that this contravened clearly established law because the allegations raise a unique set of circumstances. (*Id.*)  In response, Plaintiffs contend dismissal based on qualified immunity is premature because there is insufficient discovery to properly explore the facts at issue in this case.  (Doc. 11.)

In deciding whether Officer Wright is entitled to qualified immunity on Mr. Adeeko's unreasonable seizure claim, the Court will first determine if Officer Wright violated Mr. Adeeko's Fourth Amendment right against unreasonable seizures.

The Fourth Amendment protects all individuals from arbitrary governmental invasions by establishing "[t]he right of the people to be secure in their persons, houses, papers, and effects,

against unreasonable searches and seizures." U.S. Const. amend. IV. An individual is "seized" under the Fourth Amendment whenever an officer "accosts an individual and restrains his freedom to walk away[.]" *Terry v. Ohio*, 392 U.S. 1, 16 (1968).

Here, Plaintiffs claim Mr. Adeeko was unlawfully detained by Officer Wright for two and a half hours based only on the car rental employee's tip. Thus, the Court must determine "whether, at the moment that [Defendant] initiated the stop, the totality of the circumstances provided [him] with the reasonable suspicion required to detain a citizen under *Terry*," *Feathers v. Aey*, 319 F.3d 843, 848–89 (6th Cir. 2003), and, if the initial stop was lawful, whether the detention lasted longer than necessary. *United States v. Davis*, 430 F.3d 345, 354 (6th Cir. 2005).

An individual may be briefly stopped and questioned by police if police have a reasonable suspicion, stemming from specific and articulable facts, for believing the individual is engaged in criminal activity. *See Terry*, 392 U.S. at 21. An informant's tip can provide reasonable suspicion to make a *Terry* stop if the tip provides "sufficient indicia of reliability . . . to warrant reasonable, articulable suspicion of criminal activity." *Bazzi v. City of Dearborn*, 658 F.3d 598, 604 (6th Cir. 2011) (internal quotations and citations omitted). When an informant is known to police or has identified himself or herself to police, the tip is entitled to more weight because the informant would be subject to prosecution for making a false report. *United States v. May*, 399 F.3d 817, 824–25 (6th Cir. 2005).

The moving Defendants contend "[n]umerous cases from the federal circuits have acknowledged that information from store employees alleging that an identification or credit card is fake can contribute to suspicion justifying a seizure." (Doc. 8.) However, two of the three cases the moving Defendants cite involved tips from employees that were verified or corroborated by law enforcement before the stop was conducted. *See United States v. Lee*, 317 F.3d 26, 31 (1st

Cir. 2003) (explaining the stop was lawful based on the specific information an employee provided in combination with the officers' observations); *United States v. Campbell*, 741 F.3d 251, 263 (1st Cir. 2013) (explaining the officers had reasonable suspicion to stop the vehicle because the stop occurred after officers received a detailed report from the store clerks that the officers corroborated). The final case the moving Defendants cite, *United States v. Ullrich*, 580 F.2d 765 (5th Cir. 1978), involved specific allegations of criminal conduct, namely making purchases with a credit card reported as stolen, and the police officer spoke with the employees about the allegations prior to conducting the stop. *Id.* at 769.

In contrast, there are no facts alleging the specifics of what the car rental employee told CMAA police when she called. Instead, the complaint alleges,

> 29.     The employee then engaged in questioning Adebayo about things such as his purpose for renting the van, and where he was going with the van. The employee had called CMAA police and falsely claimed Adebayo was presenting a fake identification and form of payment.

> 30.     After several more minutes, Wright and Doe arrived and detained Adebayo.

(Doc. 1-3 at 7.)

Thus, the Court is unable to ascertain what exactly the employee told CMAA police and what Officer Wright, in turn, was told or did before arriving to detain Mr. Adeeko. At this stage in the case, the Court must construe all of the evidence in the light most favorable to the Plaintiffs. In doing so, the facts show an employee told police that a customer presented fake identification and a fake credit card at the car rental counter, but did not provide police any basis for why she believed the identification and credit card were fake. Even with the weight afforded to a known informant, the employee's vague tip was not sufficiently reliable to provide reasonable suspicion that there was ongoing criminal activity. In addition, there is no evidence that the officers corroborated the tip or spoke with the employee about why she believed the identification and

payment were fake prior to effecting the stop. Thus, based on the complaint, it appears Officer Wright only had a vague tip from the car rental employee before he stopped Mr. Adeeko, which is insufficient to provide reasonable suspicion of ongoing criminal activity. Because the stop lacked reasonable suspicion, the Court will not reach the issue of whether the stop lasted longer than necessary. *See United States v. Bonilla*, 357 F. App'x 693, 699–700 (6th Cir. 2009) (explaining that the length of the detention is irrelevant if the initial stop was unlawful).

As for whether the constitutional guarantee was "clearly established," it is well settled that an officer must have reasonable suspicion before effecting an investigatory stop. *See, e.g., Terry*, 392 U.S. at 30; *Feathers*, 319 F.3d at 850 (explaining that "*Terry*, which requires reasonable suspicion for investigative detentions, had been clearly established since 1968").

Thus, based on the facts alleged in the complaint, Plaintiffs have plausibly alleged Officer Wright violated Mr. Adeeko's clearly established constitutional right by temporarily detaining him without reasonable suspicion. Accordingly, the Court will deny the motion to dismiss Mr. Adeeko's unreasonable seizure claim.

### 2. Unreasonable Search Claim

Plaintiffs also claim Officer Wright violated Mr. Adeeko's Fourth Amendment right to be free from unreasonable searches by calling Mr. Adeeko's banks to determine the particulars of his credit card accounts. (Doc. 1-3 at 12.)

The moving Defendants contend that calling representatives of a credit card issuer does not qualify as a search under the Fourth Amendment and thus Plaintiffs' unreasonable search claim fails to state a claim upon which relief can be granted. (Doc. 8.) Even if it constitutes a search, the moving Defendants assert Officer Wright is entitled to qualified immunity because the alleged search did not violate a "clearly established" constitutional guarantee. (*Id.*)

The Court must answer two questions when determining if an action constitutes a "search" under the Fourth Amendment: (1) "whether the individual, by his conduct, has 'exhibited an actual (subjective) expectation of privacy,'" *Smith v. Maryland*, 442 U.S. 735, 740 (1979) (quoting *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring), and (2) whether "the individual's expectation, viewed objectively[,] is 'justifiable' under the circumstances[,]" *Id.* (quoting *Katz* 389 U.S. at 353).

Here, even if Mr. Adeeko had a subjective expectation of privacy in his credit card accounts, that expectation was not an objectively reasonable one. The Supreme Court has expressly held there is no reasonable expectation of privacy in financial statements and deposit slips held by banks because such information is "voluntarily conveyed to the banks and exposed to their employees in the ordinary course of business." *United States v. Miller*, 425 U.S. 435, 442–43 (1976) (explaining that "[t]he depositor takes the risk, in revealing his affairs to another, that the information will be conveyed by that person to the Government."). Thus, the information Officer Wright was calling to obtain—the validity, balances, and particulars of Mr. Adeeko's credit card accounts—is not protected by the Fourth Amendment because Mr. Adeeko voluntarily conveyed it to the institutions issuing his credit cards and exposed it to those institutions' employees. Because there is no objectively reasonable expectation of privacy in the information held by Mr. Adeeko's banks, it cannot be a violation of the Fourth Amendment for Officer Wright to call and request this information. As a result, Plaintiffs have not provided any evidence to suggest Officer Wright's actions constituted a Fourth Amendment search.

Thus, even assuming all the factual allegations are true, Plaintiffs' claim of an unreasonable search by Officer Wright fails to allege a constitutional violation. Officer Wright is entitled to qualified immunity and the claim will be dismissed.

### 3. Invasion of Privacy Claim

Plaintiffs assert that by requesting information about Mr. Adeeko's bank accounts and Ms. Adeeko's driver's license, Officer Wright violated their Fourteenth Amendment right to be free from an invasion of privacy without due process.  (Doc. 1-3 at 14.)

The moving Defendants assert that calling credit-card issuers and demanding to see a driver's license are not Fourteenth Amendment violations and thus Officer Wright is entitled to qualified immunity.  (Doc. 8.)

There are two types of privacy interests protected by the Fourteenth Amendment: "[o]ne is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions."  *Whalen v. Roe*, 429 U.S. 589, 599–600 (1977).  The Sixth Circuit Court of Appeals has narrowly construed the interest in avoiding disclosure of personal matters, recognizing fundamental privacy interests in just two instances: (1) where the information's release could lead to actual bodily harm, *Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008) (citing *Kallstrom v. City of Columbus*, 136 F.3d 1055 (1998)), and (2) where the private information was of a sexual, personal, or humiliating nature, *id.* (citing *Bloch v. Ribar*, 156 F.3d 673 (6th Cir. 1998)).

Here, Plaintiffs allege Officer Wright violated their privacy rights by calling Mr. Adeeko's banks to verify his credit cards and by obtaining Ms. Adeeko's driver's license.  (Doc. 1-3 at 14.)  Neither alleged violation constitutes an infringement of a fundamental privacy right.

First, there are no allegations that calling Mr. Adeeko's banks or demanding to see Ms. Adeeko's driver's license did or could have resulted in any physical harm to Plaintiffs.  *See Kallstrom*, 136 F.3d at 1067.

Second, there are no factual allegations that calling a bank for information on an account or seeing someone's driver's license would implicate information of a sexual, personal, or humiliating nature so as to constitute a violation of a fundamental liberty interest. *See Bloch*, 156 F.3d at 686. In fact, courts have held personal financial information and driver's licenses do not implicate fundamental privacy rights protected by the Fourteenth Amendment. *See, e.g., Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 575 (6th Cir. 2002) (explaining that a privacy interest in financial affairs is not protected by the Fourteenth Amendment); *Lambert*, 517 F.3d at 444 (affirming dismissal of claim that the disclosure of a plaintiff's full name, address, birth date, driver's license number, and Social Security number violated the Fourteenth Amendment because no fundamental rights were implicated).

Because no fundamental privacy rights have been invaded, Officer Wright did not violate Plaintiffs' Fourteenth Amendment right to privacy and he is entitled to qualified immunity. Accordingly, the Court will dismiss the invasion of privacy claim against Officer Wright.

### 4. Claim for Failure to Protect or Render Aid

Plaintiffs assert that once they were in the joint custody of Officer Wright and Officer Doe, Officer Wright had an affirmative duty to protect Plaintiffs from harm and report any misconduct by Officer Doe. (Doc. 1-3 at 16.) By failing to intervene and stop Officer Doe from engaging in misconduct, Plaintiffs allege Officer Wright deprived Plaintiffs of their Fourteenth Amendment right to be free from harm while in custody. (*Id.*)

The moving Defendants assert qualified immunity applies because officers generally are liable for their own actions, not the actions of other officers. (Doc. 8.) The moving Defendants also note that failure-to-intervene claims typically apply only when a search or seizure involves violence and thus, even if a constitutional right was violated, it was not clearly established. (*Id.*)

While failure-to-intervene claims often involve allegations of excessive force, the Sixth Circuit has acknowledged the failure-to-intervene theory of liability extends beyond the excessive-force context. *See, e.g., Jacobs v. Vill. of Ottawa Hills*, 5 F. App'x 390, 395 (6th Cir. 2001) (explaining in alleged unlawful arrest case that officers "must affirmatively intervene to prevent other officers from violating an individual's constitutional rights"); *Smith v. Heath*, 691 F.2d 220, 225 (6th Cir. 1982) (explaining in unlawful search case that "[e]ven nonsupervisory officers who are present at the scene of a violation of another's civil rights and who fail to stop the violation can be liable under section 1983."). In fact, the Sixth Circuit has specifically recognized a duty to intervene when another officer is unlawfully seizing an individual. *Smoak v. Hall*, 460 F.3d 768, 784 (6th Cir. 2006) ("Those present for an unconstitutional seizure can also be held liable for failure to protect."). Based on these cases, the duty to intervene to prevent an unlawful seizure was clearly established at the time of Plaintiffs' alleged seizure by Officer Doe.

To allege a failure to intervene, a plaintiff must show an officer "(1) observed or had reason to know that [the constitutional harm was occurring], and (2) had both the opportunity and the means to prevent the harm from occurring." *Bunkley v. City of Detroit*, No. 16-CV-11593, 2017 WL 4005919, at *4 (E.D. Mich. Sept. 12, 2017) (quoting *Holloran v. Duncan*, 92 F. Supp. 3d 774, 793 (W.D. Tenn. 2015)).

Here, Plaintiffs allege Officer Wright failed to intervene to prevent Officer Doe from conducting an unreasonable search of Ms. Adeeko and unlawfully seizing both Plaintiffs. (Doc. 1-3.)

Considering first the failure to intervene to prevent an unreasonable seizure of both Plaintiffs by Officer Doe, the Court notes that the moving Defendants are not seeking a dismissal of Ms. Adeeko's alleged unlawful seizure claim and have not offered any evidence to suggest

Officer Doe had reasonable suspicion to detain Ms. Adeeko.  In addition, the Court has already explained Mr. Adeeko's alleged detention by Officer Wright violated a clearly established right and there is no evidence to suggest Officer Doe acted differently than Officer Wright.  Thus, assuming the complaint's factual allegations are true, Officer Wright observed Plaintiffs being unlawfully seized by Officer Doe and failed to intervene despite being present at the scene and able to prevent it.  *See Sheffey v. City of Covington*, 564 F. App'x 783, 793 (6th Cir. 2014).

As a result, Plaintiffs have plausibly alleged a failure to intervene to prevent an unreasonable seizure, which was a clearly established constitutional guarantee.  *See, e.g., Smoak*, 460 F.3d at 784.  Accordingly, Officer Wright is not entitled to qualified immunity for the claim of an alleged failure to intervene to prevent Officer Doe's unreasonable seizure of Plaintiffs, and the motion to dismiss will be denied on this issue.

However, Officer Wright is entitled to qualified immunity for the claim that he failed to prevent Officer Doe from unlawfully searching Ms. Adeeko's driver's license because Officer Doe's actions do not constitute a "search" under the Fourth Amendment.

As discussed previously, the Fourth Amendment only applies when an individual has exhibited a subjective expectation of privacy and that expectation is an objectively reasonable one. *See Smith*, 442 U.S. at 740.  It is well established that law enforcement can require an individual turn over his or her driver's license during a lawful stop.  *See Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt Cty.*, 542 U.S. 177, 185–86 (2004) (explaining that during a *Terry* stop "a police officer is free to ask a person for identification without implicating the Fourth Amendment").  However, in the instant case, there is still a question of whether Ms. Adeeko was lawfully stopped when she was required to hand over her driver's license.  Thus, the Court must

determine whether an officer may view a driver's license under the circumstances in this case without conducting a "search" under the Fourth Amendment.

A driver's license is a government-issued document and is routinely employed as a method of identification by both law enforcement and private entities. An individual is required to voluntarily convey the information contained on the driver's license both to the government when it is initially issued and to all later entities that request to see it. Further, most of the information contained on a driver's license is publicly available. Thus, an individual does not have an objectively reasonable expectation of privacy in the information contained on his or her driver's license. While Officer Doe demanding to see Ms. Adeeko's driver's license might contribute to her unlawful seizure claim, *see United States v. Winfrey*, 915 F.2d 212, 216 (6th Cir. 1990) (holding that an individual was seized in part because law enforcement retained his driver's license), Ms. Adeeko lacked an objectively reasonable expectation of privacy in her license to support an unlawful search claim.

Because Officer Doe's demand to see Ms. Adeeko's driver's license did not constitute a Fourth Amendment search, Officer Wright could not have observed any constitutional harm that would have required his intervention. Accordingly, the motion to dismiss the claim of failure to intervene to prevent the alleged unreasonable search will be granted and the claim will be dismissed.

### 5. Equal Protection Claim

Plaintiffs assert Officer Wright violated Plaintiffs' right to engage in interstate commerce without governmental interference, depriving Plaintiffs of the benefit of equal protection of law. (Doc. 1-3 at 17.)

The moving Defendants first note it is unclear whether Plaintiffs' claim arises under the Equal Protection Clause or Commerce Clause. (Doc. 8.) The moving Defendants contend that if the claim is construed as concerning the Equal Protection Clause, no violation has plausibly been alleged as there are no allegations that Plaintiffs were treated differently than how similarly situated persons would have been treated. (*Id.*) If the cause of action is construed as a claim under the Dormant Commerce Clause, the moving Defendants assert the claim also fails because there are no facts suggesting the officers' actions constituted discrimination against out-of-state interests. (*Id.*)

As an initial matter, the Court finds Plaintiffs intended to assert an equal protection claim based on their express invocation of the Fourteenth Amendment and classification of their claim as a deprivation of the benefit of the equal protection of law.[2]

The Equal Protection Clause of the Fourteenth Amendment prohibits a state from denying "to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "To state an equal protection claim, a plaintiff must adequately plead that the government actor treated her 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Arsan v. Keller*, 784 F. App'x 900, 912 (6th Cir. 2019) (internal citations omitted); *see also*

---

[2] If Plaintiffs intended to assert a claim under the Dormant Commerce Clause, the complaint fails to state such a claim. The Commerce Clause "is designed to prevent economic protectionism and insure the free movement of goods between State borders, prohibiting 'laws that would excite jealousies and retaliatory measures' among the Several States." *Huish Detergents, Inc. v. Warren Cty., Ky.*, 214 F.3d 707, 710 (6th Cir. 2000) (quoting *C&A Carbone, Inc. v. Town of Clarkstown, N.Y.*, 511 U.S. 383, 390 (1994)). Thus, "[t]he Clause, by negative implication, restricts the States' ability to regulate interstate commerce." *Id.* at 712. Plaintiffs do not allege any law or regulation created an economic disadvantage or barrier to interstate commerce and thus have not plausibly stated a claim under the Dormant Commerce Clause.

*Scarbrough v. Morgan Cty. Bd. Of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006) ("The threshold element of an equal protection claim is disparate treatment").

Here, Plaintiffs claim Officer Wright's actions deprived them of the benefit of the equal protection of law by interfering with their ability to rent a vehicle. (Doc. 1-3.) The complaint, however, is devoid of any allegations of disparate treatment. The complaint does not identify any similarly situated persons who were treated differently than Plaintiffs and, in their summary judgment response, Plaintiffs do not offer any evidence of disparate treatment. (Doc. 11.) By failing to allege any disparate treatment by Officer Wright, Plaintiffs have not met the threshold requirement to state an equal protection claim.

As a result, the motion to dismiss will be granted and the equal protection claim as alleged against Officer Wright will be dismissed.

### 6. Right to Enforce Contract

Plaintiffs' final claim against Officer Wright is pleaded under 42 U.S.C. § 1981. Plaintiffs allege Officer Wright violated Mr. Adeeko's right to enter into and enforce contracts because of his race. (Doc. 1-3.) The Court has already determined that this claim, even if it had been properly pleaded under § 1983, would not survive a motion to dismiss because Plaintiffs failed to allege intentional discrimination. Accordingly, this claim will be dismissed.

### D. Motion to Dismiss Claims Against CMAA

The moving Defendants have also moved to dismiss all claims against CMAA for failure to state a claim. (Doc. 8.)

"A governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation[.]" *Graham*, 473 U.S. at 166. As a result, a plaintiff must show "the municipality had a 'policy or custom' that caused the violation of his rights." *Monell*, 436 U.S. at

694.  This can be accomplished by demonstrating: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision-making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations."  *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)).

Plaintiffs assert CMAA is liable for each of Officer Wright's and Officer Doe's alleged violations by failing to properly train and supervise its officers.  (Doc. 1-3.)  Plaintiffs contend this failure amounts to deliberate indifference and created an environment where officers could act unlawfully and not be punished in a significant way.  (*Id.*)

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."  *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  The failure to train must constitute "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact."  *Id.* (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)).  Deliberate indifference requires "proof that a municipal actor disregarded a known or obvious consequence of his action."  *Id.* (quoting *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 410 (1997)).

A plaintiff usually must allege "a pattern of similar constitutional violations by untrained employees . . . to demonstrate deliberate indifference for purposes of failure to train."  *Id.* (citing *Bryan Cty.*, 520 U.S. at 409).  "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights."  *Id.*  However, the Supreme Court has acknowledged that deliberate indifference could be shown without a pattern of violations if there is "evidence of a single violation of federal rights, accompanied by a showing that a municipality has failed to train

its employees to handle recurring situations presenting an obvious potential for such a violation[.]" *Bryan Cty.*, 520 U.S. at 409.

As discussed above, the Court will dismiss Plaintiffs' claims against Officer Wright for an unreasonable search, invasion of privacy, failure to intervene to prevent an alleged search, violation of the Equal Protection Clause, and an infringement on the right to contract. As a result, there can be no liability for CMAA for these alleged violations. *See Weeks v. Portage Cty. Exec. Offices*, 235 F.3d 275, 279 (6th Cir. 2000) (explaining that "there can be no § 1983 municipal liability as a matter of law absent the finding of a constitutional violation").

As for the remaining claims, Plaintiffs have not alleged any prior incidents of constitutional violations that would have put CMAA on notice of a deficient training program. (*See* Doc. 1-3.) The complaint also does not provide any factual allegations to suggest what training Officer Wright and Officer Doe did or did not receive from CMAA that caused the alleged constitutional violations. Finally, there is no indication, and Plaintiffs have not offered any evidence to suggest, that the types of violations alleged are obvious consequences of a lack of training. Thus, the complaint fails to allege a plausible claim against CMAA for failure to train to prevent the alleged violations by Officer Wright and Officer Doe. Accordingly, the motion to dismiss the claims against CMAA will be granted and the claims will be dismissed.

IV.     **CONCLUSION**

For the foregoing reasons, the Court will **ORDER** as follows:

1.  Plaintiffs' motion to amend will be **DENIED;**

2.  The motion to dismiss Plaintiffs' claims against Officer Wright in his official capacity will be **GRANTED** and all claims against Officer Wright in his official capacity will be **DISMISSED**;

3. The motion to dismiss Mr. Adeeko's unreasonable seizure claim against Officer Wright will be **DENIED**;

4. The motion to dismiss Plaintiffs' unreasonable search claim against Officer Wright will be **GRANTED** and the claim will be **DISMISSED**;

5. The motion to dismiss the invasion of privacy claim against Officer Wright will be **GRANTED** and the claim will be **DISMISSED**;

6. The motion to dismiss the claim against Officer Wright for failure to intervene to prevent an unreasonable seizure will be **DENIED**;

7. The motion to dismiss the claim against Officer Wright for failure to intervene to prevent an unreasonable search will be **GRANTED**, and the claim will be **DISMISSED**;

8. The motion to dismiss the equal protection claim against Officer Wright will be **GRANTED** and the claim will be **DISMISSED**;

9. The motion to dismiss the § 1981 claim against Officer Wright will be **GRANTED** and the claim will be **DISMISSED**; and

10. The motion to dismiss the claims against CMAA will be **GRANTED** and all claims against CMAA will be **DISMISSED**.


**An appropriate order will enter.**


**/s/**_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**